******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# BERNARD W. NUSSBAUM ET AL. *v.* DEPARTMENT OF ENERGY AND ENVIRONMENTAL PROTECTION
## (AC 43865)

Bright, C. J., and Clark and Bear, Js.

*Syllabus*

The plaintiffs, N and the trust of which N was the sole trustee, appealed to this court from the judgment of the trial court dismissing their administrative appeal from the decision of the Commissioner of Energy and Environmental Protection denying N's application for a permit to maintain fences on certain real property owned by the trust adjacent to Long Island Sound and ordering that the fences be removed. N had installed the fences, without the required permit from the defendant, the Department of Energy and Environmental Protection, in part to deter public access to the area waterward of the mean high waterline in front of the property. The property on the waterward side is public land held in trust by the state. The department thereafter issued to N a notice of violation, informing him that the fences were unauthorized and ordered him to remove them. After a hearing, a department hearing officer issued a decision recommending that N's permit application be denied. The commissioner adopted the hearing officer's decision and issued a final decision affirming the denial of the permit application and directing the hearing officer to finalize the removal order. The trial court concluded, inter alia, that the record contained substantial evidence to support the commissioner's determination that the fences were constructed on public land to deter public access to that land, and that the commissioner's decision and removal order were not unreasonable, arbitrary, capricious, illegal or an abuse of discretion. *Held* that upon this court's review of the record, and the briefs and arguments of the parties, the judgment of the trial court was affirmed, and this court adopted the trial court's thorough and well reasoned memorandum of decision as a proper statement of the facts and the applicable law on the issues.

Argued May 18—officially released August 17, 2021

*Procedural History*

Appeal from the decision of the defendant denying a permit application to maintain a fence on certain real property of the plaintiff Bernard W. Nussbaum Revocable Trust, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment dismissing the appeal, from which the plaintiffs appealed to this court. *Affirmed.*

*John P. Casey*, with whom were *Evan J. Seeman* and, on the brief, *Andrew A. DePeau*, for the appellants (plaintiffs).

*David H. Wrinn*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiffs, Bernard W. Nussbaum (Nussbaum) and the Bernard W. Nussbaum Revocable Trust (trust),[1] appeal from the judgment of the trial court dismissing their administrative appeal from the final decision of the Commissioner of Energy and Environmental Protection (commissioner), denying Nussbaum's application for a permit for two post and wire fences previously erected on certain shoreline property and ordering that the fences be removed. On appeal, the plaintiffs claim that the court erred in concluding (1) that the commissioner's final decision was not arbitrary, illegal, or an abuse of discretion, and (2) that the defendant, the Department of Energy and Environmental Protection (department), (a) properly considered that, under Connecticut law, changes to land, either natural or man-made, which amount to reclamation or erosion, *may*, under certain circumstances, alter the mean high waterline bordering private shoreline property, (b) correctly determined the location of the mean high waterline bordering the plaintiffs' property, and (c) properly balanced the plaintiffs' private rights with the public's interest in land held in trust under the statutes concerning structures, dredging, and fill; General Statutes §§ 22a-359 through 22a-363; and the Coastal Management Act, General Statutes § 22a-90 et seq. We affirm the judgment of the trial court.

The record discloses the following relevant facts. The trust owns real property located at 100 and 104 Sea Beach Drive in Stamford (property), which is adjacent to Long Island Sound (sound).[2] The boundary of the property adjacent to the sound is defined by the mean high waterline and ends on the landward side of the mean high waterline. The property on the waterward side of the mean high waterline is public land held in trust by the state of Connecticut. There is a seawall on the property that generally runs parallel to the edge of the sound.

Without having first obtained a required permit from the department, Nussbaum installed two fences that run perpendicular to the seawall toward the sound. One of the fences is twenty-four and one-half feet in length, and the other one is twenty-seven and one-half feet in length. Nussbaum installed the fences, at least in part, to deter public access to the area waterward of the mean high waterline in front of the property.[3] In 2002, prior to the installation of the fences, the department had granted Nussbaum permission to place a small area of large stones, or "riprap," generally perpendicular to the seawall extending out into the sound. The area of riprap is comprised of large individual rocks with nothing, other than the ground on which they are placed, joining them. The fences at issue were installed on the riprap.

On July 16, 2012, the department issued a notice of violation to Nussbaum that the fences were unauthorized and ordered him to remove them. The fences were not removed. Instead, on October 30, 2014, Nussbaum filed an after-the-fact application with the department for a permit for the fences. The department tentatively denied the permit application, and, on November 30, 2015, ordered that the fences be removed. Following timely requests for hearings on both the permit application and the removal order, the matters were consolidated for hearing purposes. A public comment hearing was held on August 4, 2016, and an evidentiary hearing was held on October 6, 2016. The department hearing officer issued his decision on April 21, 2017, recommending to the commissioner that the permit application be denied. The commissioner adopted the decision of the hearing officer as his own and issued a final decision on February 6, 2018, affirming the denial of the permit application and directing the hearing officer to finalize the removal order.

On March 21, 2018, the plaintiffs appealed the commissioner's decision to the Superior Court pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. See General Statutes § 4-183.[4] In their administrative appeal, the plaintiffs claimed that (1) they were aggrieved by the commissioner's final decision because it was illegal, arbitrary, capricious, and constituted an abuse of discretion, (2) their substantial rights were prejudiced because the commissioner's findings, inferences, conclusions or decision were in violation of statutory provisions or in excess of the commissioner's statutory authority, (3) their use and enjoyment of the property and the waters of the sound to which it is contiguous are adversely affected by the decision, and (4) the order to remove the fence will allow members of the public to continue to trespass on the property and be at risk of injury due to the dangerous conditions on the property and its shoreline.

Following the parties' submission of briefs, the court heard argument on November 12, 2019, and issued a memorandum of decision on November 14, 2019, dismissing the plaintiffs' administrative appeal. The plaintiffs filed a motion for reconsideration and reargument on December 3, 2019, to which the defendant objected on January 2, 2020. The court granted the motion for reargument and held a hearing on the motion for reconsideration on January 9, 2020. The court issued an amended memorandum of decision on January 10, 2020, concluding that the department properly balanced the rights of the plaintiffs and the public, and that the record contains substantial evidence to support the commissioner's decision. The court also denied the motion for reconsideration.[5] The plaintiffs appealed to this court.

"Our standard of review of administrative agency

rulings is well established. . . . Judicial review of an administrative decision is a creature of statute . . . and [§ 4-183 (j)] permits modification or reversal of an agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error or law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . .

"Under the UAPA, the scope of our review of an administrative agency's decision is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither [the appellate] court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Dept. of Agriculture*, 168 Conn. App. 255, 265–66, 145 A.3d 393, cert. denied, 323 Conn. 936, 151 A.3d 386 (2016). "It is fundamental that a plaintiff has the burden of proving the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion . . . ." (Internal quotation marks omitted.) Id., 266.

In addressing the plaintiffs' claims in the administrative appeal, the court concluded that the commissioner's decision and the removal order were not unreasonable, arbitrary, capricious, illegal or an abuse of discretion. First, the court addressed the plaintiffs' claim that installation of riprap at the end of the property and into the sound moved the mean high watermark further into the sea and extended the boundary line between the property owned by the trust and the land held in trust by the state. The court observed that the commissioner had recognized the common-law principle of reclamation by which natural or man-made structures, such as the riprap on which the fences were constructed, *may*, in certain circumstances, change the mean high waterline and, thus, extend a landowner's property into what might otherwise constitute public land held in trust by the state. It concluded, however, that the question of whether the riprap in the present case constituted reclaimed land was primarily a question of fact and that the commissioner reasonably determined, with substantial evidentiary support in the

record, that the riprap had not changed the mean high waterline. Specifically, it concluded: "Seawater flows around the rocks and within the riprap. The tidal waters reach the face of the seawall, even directly behind the riprap. As such, the riprap does not stop the seawater from reaching the seawall with each high tide. Nearly all of the rocks composing the riprap are submerged at high tide. The facts substantially support the commissioner's finding that the mean high waterline did not change in this case. . . . The foregoing conclusion means that, essentially, all of the fences are on land [held] by the state in trust for the public." (Footnote omitted.)

Having concluded that the commissioner's determination that the fences were constructed on public land was supported by substantial evidence in the record, the court then addressed the plaintiffs' claim that the commissioner had failed to properly balance, pursuant to § 22a-359 (a),[6] the plaintiffs' asserted private property rights in constructing the fences against the public's interest in accessing the public land that the fences obstruct. The court noted that the commissioner considered the plaintiffs' asserted rights (1) to quiet enjoyment of the land upward of the mean high waterline, (2) to be free from private nuisance, (3) to be free from trespass, and (4) to be free from lawsuits for injuries sustained by the public on public land held in trust by the state. The court concluded that, in balancing the rights asserted by the plaintiffs against the public's right to access the public land, the commissioner properly found that the plaintiffs' interests could be protected adequately without the fences, which, by design, significantly impair public access to the public land held in trust. Last, the court observed that the commissioner had acknowledged generally a landowner's ancient common-law littoral right to use and wharf out into an intertidal area, but also noted that such rights are not absolute and must be balanced against the public's right to access the land below the mean high waterline. Moreover, the commissioner determined that the very purpose of the fences was to deter the public's access to the area below the mean high waterline, not to facilitate the plaintiffs' littoral rights to access the water. In sum, the court found that the record contained substantial evidence to support the commissioner's findings and conclusions, which were reasonable under the circumstances.

We have reviewed the record and the proceedings in the trial court in accordance with the applicable standard of review. Our review of the record, as well as the briefs and arguments of the parties on appeal, persuades us that the judgment of the court should be affirmed. We, therefore, adopt the court's thorough and well reasoned amended memorandum of decision as a proper statement of the facts and the applicable law on the issues. See *Nussbaum* v. *Dept. of Energy &*

*Environmental Protection*, Superior Court, judicial district of New Britain, Docket No. CV-18-6043337-S (January 10, 2020) (reprinted at 206 Conn. App.      ,      A.3d      ). Any further discussion of the issues by this court would serve no useful purpose. See, e.g., *Woodruff* v. *Hemingway*, 297 Conn. 317, 321, 2 A.3d 857 (2010); *Lawrence* v. *Dept. of Energy & Environmental Protection*, 178 Conn. App. 615, 618, 176 A.3d 608 (2017).

The judgment is affirmed.

[1] In this opinion, we refer to Nussbaum and the trust collectively as the plaintiffs, and individually by name when necessary.

[2] In their administrative appeal, the plaintiffs alleged that Nussbaum is the sole trustee of the trust.

[3] The area is covered by rocks; it is not a sandy beach. People generally access the area to fish.

[4] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal. . . .

"(i) The appeal shall be conducted by the court without a jury and shall be confined to the record. . . . The court, upon request, shall hear oral argument and receive written briefs. . . ."

[5] In its amended memorandum of decision, the court stated that the motion for reconsideration identified areas of the original decision that appeared to be unclear. The perceived lack of clarity arose primarily from nomenclature used by the court. The amended decision clarified those areas but did not substantively affect the court's decision or judgment. The motion for reconsideration did not raise any issue that caused the court to change substantially its decision or judgment.

[6] General Statutes § 22a-359 (a) provides in relevant part: "The Commissioner of Energy and Environmental Protection shall regulate dredging and the erection of structures and the placement of fill, and work incidental thereto, in the tidal, coastal or navigable waters of the state waterward of the coastal jurisdiction line. Any decisions made by the commissioner pursuant to this section shall be made with due regard for indigenous aquatic life, fish and wildlife, the prevention or alleviation of shore erosion and coastal flooding, the use and development of adjoining uplands . . . the use and development of adjacent lands and properties and the interests of the state, including pollution control, water quality, recreational use of public water and management of coastal resources, with proper regard for the rights and interests of all persons concerned."