******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# AMMAR A. IDLIBI *v.* CONNECTICUT STATE DENTAL COMMISSION
## (AC 44331)

Prescott, Alexander and Harper, Js.

*Syllabus*

The plaintiff dentist appealed from the judgment of the trial court dismissing his administrative appeal from the final decision of the defendant Connecticut State Dental Commission. The plaintiff had treated a minor patient under general anesthesia for the placement of stainless steel crowns in the patient's mouth. Initially, the patient's mother was told that the treatment plan required the placement of only one steel crown and that additional teeth may need fillings, but that such treatment plan could not be finalized until after X-rays were taken during the procedure. Thereafter, the plaintiff placed eight crowns in the patient's mouth, without the knowledge or informed consent of the patient's mother. Subsequently, she filed a complaint with the Department of Public Health, which brought a statement of charges against the plaintiff, alleging that his dental license was subject to disciplinary action pursuant to statute (§ 20-114 (a)). The commission found, inter alia, that the plaintiff failed to meet the applicable standard of care in treating the patient. On the plaintiff's appeal to this court, held:

1. The commission's claim that the trial court lacked subject matter jurisdiction to hear the plaintiff's administrative appeal was unavailing; although the plaintiff sent the appeal via certified mail to the department, rather than to the commission, as required by statute (§ 4-183), the record demonstrated that the address for both the department and the commission was essentially the same but for the name of the agency to which the mail was addressed, the commission did not claim that the appeal was untimely, that it did not have actual notice or that it was prejudiced by the plaintiff's error, the commission filed a timely appearance, and, on these bases, the plaintiff's failure to properly serve the commission was akin to a defect in the service of process, rather than a total failure to serve the agency.

2. The trial court properly determined that the commission may rely on its own expertise in assessing the evidence and reaching its conclusion that the plaintiff had breached the applicable standard of care, as the commission was granted broad discretion, pursuant to its statutory (§ 20-103a) authority, in determining the appropriate standard of care in an administrative, licensing procedure: the record revealed that the commission relied on the informed consent requirements of the American Academy of Pediatric Dentistry, testimony from various witnesses including the plaintiff, as well as its own expertise, technical competence, and specialized knowledge; moreover, the plaintiff did not cite any support for his claim that the members of the commission were required to have expertise in the specialized field of pediatric dentistry, there was no separate and distinct commission authorized to handle licensing matters concerning pediatric dentistry, and the statute (§ 52-184c) that defines what constitutes a health care expert in a particular field in medical malpractice actions was not applicable to qualifying the witnesses as experts in an administrative licensing procedure governed by statute (§ 4-178); furthermore, the court did not err in concluding that the commission properly permitted expert testimony from a dentist who was not board certified, as the credibility of the expert was for the commission to consider in its determination of the applicable standard of care in the proceedings.

3. The plaintiff could not prevail on his claim that the trial court improperly dismissed his challenge to the commission's findings that he breached the standard of care by failing to obtain informed consent for placing more than one crown on the patient's teeth, as the record contained substantial evidence to support the commission's findings; although the patient's mother signed a standard consent form on the day of the procedure consenting to treating unforeseen conditions, she had requested to speak with the plaintiff after X-rays were taken and, because

he failed to do so, his actions exceeded the consent he received from the standard written form, the commission's determination was based on its assessment of the credibility of the witnesses, and the commission was authorized to ascertain the standard of care, which meant determining the proper standard by which to obtain informed consent.

4. The commission did not act in excess of its statutory (§ 20-114 (a) (2)) authority in ordering disciplinary sanctions as a remedy for the plaintiff's violation of the standard of care; the plaintiff's claim that § 20-114 (a) (2) did not grant the commission authority to discipline him because the department did not, inter alia, allege negligence or incompetence in its charges was unavailing, as it is within the commission's authority to determine the meanings of the terms within § 20-114 (a) (2) relevant to the practice of dentistry, and the commission may take disciplinary action on the basis of a dentist falling below a standard of care, which was equivalent to a finding of incompetence or negligence under § 20-114 (a) (2).

5. The plaintiff could not prevail on his claim that the record did not support the commission's finding that the plaintiff failed to adequately chart caries and decalcifications, as the record contained substantial evidence, including the plaintiff's operative note made during his treatment of the patient, multiple X-rays of the patient, and witness testimony concerning the patient's charting; although the court misstated the commission's conclusion regarding the adequacy of the charting for the placement of additional crowns, any such error was harmless.

6. The plaintiff could not prevail on his claim that there were unresolved inconsistencies in the commission's decision, as the commission was within its authority to find that the department proved some of the charges alleged against the plaintiff, while finding that the department had failed to prove other charges, and the six charges against the plaintiff were not dependent on each other.

7. This court declined to review the plaintiff's unpreserved claim under *State* v. *Golding* (213 Conn. 233) that the trial court's decision to dismiss his appeal violated his right to fundamental fairness, the plaintiff having failed to explain what part of the proceedings allegedly constituted a violation of any constitutional right.

Argued January 12—officially released May 17, 2022

*Procedural History*

Appeal from the decision of the defendant concluding that the plaintiff failed to meet the applicable standard of care while treating a patient and ordering disciplinary sanctions with respect to the plaintiff's dental license, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Hon. Henry S. Cohn*, judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Ammar A. Idlibi*, self-represented, the appellant (plaintiff).

*Shawn L. Rutchick*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellee (defendant).

*Opinion*

HARPER, J. The self-represented plaintiff, Ammar A. Idlibi, appeals from the judgment of the Superior Court dismissing his administrative appeal from the decision of the defendant, the Connecticut State Dental Commission (commission), finding that the plaintiff had failed to meet the applicable standard of care while treating a three year old patient and ordering disciplinary sanctions with respect to the plaintiff's dental license. On appeal, the plaintiff claims that the court improperly dismissed his administrative appeal. Specifically, the plaintiff claims that the court improperly (1) determined that it was proper for the commission to rely on its own expertise in reaching its conclusion that he had breached the applicable standard of care by failing to obtain adequate informed consent; (2) concluded that the commission properly permitted certain expert testimony from a witness who was not board-certified and, as such, lacked knowledge as to the prevailing standard of care; (3) rejected his challenge to the commission's finding that he breached the standard of care by failing to obtain informed consent to place more than one stainless steel crown in the patient's mouth because (a) he did obtain informed consent and (b) the commission, in finding a deviation from the standard of care, acted in excess of its statutory authority; (4) determined that the evidence in the record supports the commission's finding that he failed to chart caries[1] and decalcifications adequately in violation of the standard of care; (5) left unresolved inconsistences in the commission's decision; and (6) violated his right to fundamental fairness.[2] The commission contends that the court lacked subject matter jurisdiction because the plaintiff served his administrative appeal on the Department of Public Health (department) rather than on the commission.[3] We affirm the judgment of the Superior Court dismissing the plaintiff's appeal.

The following facts and procedural history are relevant to this appeal. The plaintiff is a licensed, board-certified pediatric dentist and has been a member of the American Academy of Pediatric Dentistry (AAPD) since 1990. The plaintiff provides specialized care for children under general anesthesia at the Connecticut Children's Medical Center (hospital), where he has had privileges since 2004.

After the patient was referred to the plaintiff's office by a general dentist, an associate dentist at the office, Joseph Guzzardi, first attempted to treat the patient on January 11, 2016. At that appointment, Guzzardi was not able to take X-rays of the patient but was able to observe the patient's teeth. On the basis of his observations, he indicated to the patient's mother that the patient would require one crown on tooth S and that two more teeth may need fillings. The mother signed multiple consent forms authorizing "treatment of diseased or injured teeth

with dental restoration (filling or caps) . . . treatment as may be advisable to preserve health and life," and treatment of unforeseen conditions. She also signed a form consenting to the use of stainless steel crowns.

On January 21, 2016, the patient's mother called Guzzardi to express concern with the idea of placing a stainless steel crown on her child's tooth. Guzzardi testified that, during this phone call, he explained to her that tooth S absolutely needed a crown and that the patient may need multiple crowns. At an appointment on April 8, 2016, the mother again signed a consent form consenting to the treatment of unforeseen conditions. At that appointment, Guzzardi attempted to treat the patient in his office with the use of general anesthesia but was unsuccessful because the attending anesthesiologist was not comfortable going forward with the procedure given the patient's negative reaction to the general anesthesia.

The patient subsequently was placed on the plaintiff's schedule for treatment at the hospital. The day of the procedure was the first time that the patient and her mother had ever met the plaintiff, as they previously had communicated with, and the patient received treatment from, Guzzardi. On April 26, 2016, the plaintiff provided care to the three year old patient under general anesthesia. During the course of the procedure, the plaintiff placed eight stainless steel crowns in the patient's mouth. The patient's mother subsequently filed a complaint with the department.[4]

On September 7, 2017, the department presented the commission,[5] as the relevant governing board, with a statement of charges against the plaintiff. The charges alleged that the plaintiff's license was subject to disciplinary action pursuant to General Statutes § 20-114 (a)[6] on the ground that the care provided to the three year old patient failed to meet the standard of care. Specifically, the department alleged that the plaintiff (1) failed to obtain adequate informed consent for placing eight stainless steel crowns in the patient's mouth, (2) placed one or more crowns without adequate justification, or without adequate documentation of such, (3) failed to make adequate attempts at treatment without general anesthesia or failed to document those attempts adequately, (4) failed to chart findings of cervical decalcification[7] adequately, (5) failed to attempt treatment of cervical decalcification other than by placement of crowns, and (6) failed to adequately chart caries or other dental disease for one or more of the teeth that he crowned.

The parties were notified that hearings would be held before a duly authorized panel of commissioners (panel) comprised of Steven G. Reiss, a doctor of dental surgery; Deborah Dodenhoff, a registered nurse; and Anatoliy Ravin, also a doctor of dental surgery. The hearings took place on January 11 and 16, 2018.[8] Both the plaintiff

and the department presented evidence, conducted cross-examination of witnesses, and provided argument. At the hearing, the department called Jenny Federman, a pediatric dentist, to testify as an expert. After extensive direct and cross-examination, the panel qualified Federman to testify as an expert. During the hearing, Federman testified extensively about her opinion concerning the X-rays of the patient. She stated that "[the patient] had one cavity on X-ray and came out with eight crowns." She testified that the informed consent in this case was not adequate because the patient's mother "made it very clear she didn't want eight stainless steel [crowns]. She didn't even want one, and she asked [the plaintiff] to come out after he took the X-rays. . . . It's ultimately the parent's decision." When asked whether the consent form or the conversations between the dentist and the patient to which the witness testified governed informed consent, she stated: "In my opinion, it would be the conversations."

The plaintiff called Donald Kohn, a board-certified pediatric dentist, to testify as an expert witness. Kohn testified that informed consent should be understood "[f]rom the patient's point of view." He also testified that communicating from the operating room to a patient's parent is a practice he does "frequently" to "reassure [the parent] . . . [and] when there's really been a dramatic change . . . in the treatment plan . . . ." Kohn also testified that "the standard is, what does mom understand? And we have to start to think about what is the consent giver's appreciation of what I'm going to do? And again, we really have to stress, when you go to the operating room the conundrum is you don't know what you're going to find there and so when you get something that's so drastically different from what you initially did, at what point do you do it?" He further testified: "I would say that anything that you can do to make sure that the parent knows the range of—and appreciates the range of outcomes is going to strengthen your informed consent." In response to a question regarding possible preventative measures, Kohn testified that if "all you're seeing is decalcification . . . there are some things you can do. . . . [W]e have . . . some other approaches that we didn't have even a few years ago."

In addition to those expert witnesses, the patient's mother, Guzzardi, and the plaintiff testified. The patient's mother testified emphatically that she had discussed and agreed to placing a crown on only one tooth, tooth S, and that "[n]ever, ever was there any other discussion about [any] other tooth or [other] stainless steel crowns . . . ." She also testified that she and the plaintiff had agreed that, before he did anything to the patient, he would come out of the operating room and let her know what the X-rays and the examination showed. She stated: "From my understanding, I couldn't agree or say anything until [the plaintiff] came out and let me know what my child needed."

Guzzardi testified that "[t]he last agreement that I had with [the patient's] mom when we walked into the room for using general anesthesia was that . . . tooth S definitely needs a crown. There may be further cavities. I will do my best capabilities in invasive procedure, such as a filling, but there may need to be more crowns. I will not know until I have X-rays." When asked by the department's counsel what his understanding was at the appointment that occurred on April 8, 2018, of what the patient's mother had consented to, he stated that "[she] consented to definitely needing a crown on [tooth] S and having the potential to need crowns on other teeth, based on the X-rays and what they reveal[ed]." When asked if, at any time, the mother consented to eight crowns, Guzzardi answered, "[n]o, not specifically eight."

On July 24, 2018, the panel issued a proposed final decision,[9] which the plaintiff opposed. On September 5, 2018, the commission issued a final decision finding that the plaintiff had failed to meet the standard of care. Specifically, the commission found that the plaintiff (1) failed to obtain adequate informed consent from the patient's mother to place crowns on eight of the patient's teeth, (2) placed one or more crowns without adequate justification,(3) failed to chart findings of cervical decalcification adequately, (4) failed to attempt treatment of the cervical decalcification by other means, and (5) failed to chart caries or other dental disease adequately for one or more of the teeth that was crowned. The only charge that the commission did not find against the plaintiff was the allegation that the plaintiff had failed to make adequate attempts at treatment without general anesthesia, as the commission determined there was insufficient evidence to support that charge. Subsequently, the commission ordered sanctions against the plaintiff, including the payment of a $10,000 civil penalty, placement of a reprimand on his license, and a three year probationary period during which his license would be subject to conditions.

On September 10, 2018, the plaintiff appealed to the Superior Court. On appeal he contended that (1) the commission's findings regarding the standard of care were not permitted under § 20-114 (a) (2); (2) the commission's findings on informed consent and the failure to chart were not permitted by § 20-114 (a) (2); (3) the commission erred in permitting Federman, a pediatric dentist who is not board-certified, to testify as an expert; (4) the commission erroneously relied on its own expertise in reaching its conclusions; (5) the chairman of the panel should have been disqualified to hear the matter; and (6) the commission improperly restricted his cross-examination at the hearing. After briefing by the parties and oral argument, on January 7, 2020, the court issued an order remanding the final decision for clarification of finding number twenty-six,[10] concerning whether the plaintiff's treatment violated the AAPD standards. The

panel heard this issue on remand and issued a new proposed final decision, finding, inter alia, that "the use of stainless steel crowns was not justified, and [that the plaintiff] practiced below the standard of care in using eight stainless steel crowns." The commission subsequently considered the panel's proposed final decision and, this time, disagreed with the panel and voted to change the new proposed decision with respect to finding number twenty-six. On June 16, 2020, the commission issued a second final decision, this time determining that it was not a violation of the standard of care to place eight stainless steel crowns in the patient's mouth, but that the disciplinary orders contained in the initial decision were still appropriate on the basis of the other findings concerning the allegations against the plaintiff.

On August 10, 2020, the court issued a second remand order related to the same charge. Specifically, the court ordered the commission to reconcile an inconsistency between the finding of fact that the plaintiff "did not practice below the standard of care with respect to the placement of the stainless steel crowns" with a statement in its decision that "the [department] sustained its burden of proof" with respect to this charge. The court stated, "[i]f the plaintiff was admittedly not liable at all on this charge per finding of fact [number twenty-six], and did not fall below the standard of care, the statement . . . finding that the department's burden of proof was sustained regarding lack of justification cannot stand. . . . [T]he penalty chosen by the commission must not be based on inconsistencies, leaving open questions of interpretation." (Internal quotation marks omitted.) On September 16, 2020, the commission issued a third and final decision, which is the operative decision on appeal. The final decision stated that, "[w]ith regard to the allegations . . . of the charges that [the plaintiff] placed one or more crowns without adequate justification . . . the department did not sustain its burden of proof." In addition, finding number twenty-six was amended to include further explanation of the AAPD guidelines.[11]

On October 13, 2020, the court issued a written decision dismissing the plaintiff's appeal. The court concluded, inter alia, that the commission properly relied on its own expertise in establishing the applicable standard of care and in assessing the evidence in order to determine whether the plaintiff had met that standard. The plaintiff filed a motion to reargue, which the court denied. This appeal followed. Additional facts will be set forth as necessary.

I

Because subject matter jurisdiction is a threshold issue, we first address the commission's claim that the court lacked subject matter jurisdiction to hear the plaintiff's administrative appeal. The commission claims that the

court improperly concluded that the plaintiff did, in fact, serve the commission in accordance with the service requirements of General Statutes § 4-183. The commission further argues that the "[p]laintiff's failure to timely serve any appeal papers on the [commission] as required by [§ 4-183] deprived the Superior Court of subject matter jurisdiction. . . . Failure to serve the [commission] as the agency that rendered the decision implicates the court's subject matter jurisdiction . . . ." The plaintiff responds in his reply brief that the court did have jurisdiction over this matter. We agree with the plaintiff and conclude that the court had subject matter jurisdiction over the plaintiff's administrative appeal.

The following additional facts are necessary to our resolution of this claim. On November 5, 2018, the commission filed a motion to dismiss challenging the court's subject matter jurisdiction. Specifically, the commission argued that the plaintiff did not serve the appeal on the commission as the agency that issued the final decision. On November 6, 2018, the plaintiff filed an objection. On January 15, 2019, the court held a hearing on the commission's motion to dismiss. After hearing argument from both parties, the court stated, "I'm going to deny the motion. And let me tell you, there is this case, [*Redding* v. *Connecticut Siting Council*, 45 Conn. App. 620, 697 A.2d 698, cert. denied, 243 Conn. 920, 701 A.2d 343 (1997)]. In that case, the Department of Public Safety was served but not . . . the Connecticut Siting Council. The holding was that they were . . . totally separate agencies, [they] wanted nothing to do with the other. There was no record at all of the service being made on the Connecticut Siting Council and that would . . . [mean that] they do not have . . . subject matter jurisdiction.

"When you have an agency like [the department] that sends out a notice, this is a decision of the [commission] and it's signed by the [department], and the [commission] is part of the [department], even though they're not the—they don't render decisions, they prosecute and there's this line between what they can do and what they can't do. I cited . . . [*Gould* v. *Freedom of Information Commission*, 314 Conn. 802, 104 A.3d 727 (2014)]. There's enough of a mixture here that I think a confusion could have come about and I would cite [*Tolly* v. *Dept. of Human Resources*, 225 Conn. 13, 621 A.2d 719 (1993)]. . . . Here the fellow had his secretary serve the paper and . . . we're going to . . . find that there was sufficiently no prejudice here . . . . [See also *Kindl* v. *Dept. of Social Services*, 69 Conn. App. 563, 795 A.2d 622 (2002)]."

On February 4, 2019, the commission filed a motion to reargue, which was denied by the court. On February 16, 2021, the commission filed a motion to dismiss the plaintiff's appeal with this court, raising the same jurisdictional issues as its initial motion. This court denied

that motion on March 31, 2021. The commission did not file a cross appeal from the Superior Court's decision to deny its motion to dismiss. On appeal, the commission argues that the service that was made on the department, but not on the commission, was improper and thus deprived the court of subject matter jurisdiction over the plaintiff's administrative appeal.

Our standard of review for this claim is well established. "[Our Supreme Court has] long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . There is no absolute right of appeal to the courts from a decision of an administrative agency. . . . Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Citations omitted; internal quotation marks omitted.) *Markley* v. *State Elections Enforcement Commission*, 339 Conn. 96, 106, 259 A.3d 1064 (2021).

Section 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . . (c) (1) Within forty-five days after mailing of the final decision . . . a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the Attorney General in Hartford . . . . Within that time, the person appealing shall also serve a copy of the appeal on each party listed in the final decision at the address shown in the decision, provided failure to make such service within forty-five days on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal. . . ."

Our Supreme Court in *Tolly* v. *Dept. of Human Resources*, supra, 225 Conn. 28–29, articulated an important distinction between a total failure to serve the agency and a defect in service upon the agency, stating: "If there is no service at all on the agency within the forty-five day period, the court lacks subject matter jurisdiction over the appeal . . . . If, however . . .

there is an arguable defect in the process that was timely served on the agency . . . rather than a failure to make service at all within the applicable time period, the court does not lack subject matter jurisdiction over the appeal. Under those circumstances, § 4-183 (d) applies, and the appeal is dismissible only upon a finding of prejudice to the agency." (Citation omitted.)

At the January 15, 2019 hearing, the plaintiff conceded that he sent the appeal via certified mail to the department, rather than to the commission. The record shows, however, that the address for both the department and the commission is the same, 410 Capitol Avenue, and that the only practical difference was the name of the agency to which the mail was addressed. At the hearing, the court, in a colloquy with the plaintiff, stated: "All you had to do is put the [commission] on there and you would have been all set." The memorandum of decision issued by the commission was signed by Jeffrey A. Kardys, and his signature block indicated that he was an employee of the department, rather than of the commission. Additionally, the commission filed an appearance with the court within forty days, which was well within the statutory period of the forty-five days to make service. Thus, the commission does not claim that it did not have actual notice of the appeal, or that it was untimely. Nor does it claim that it was prejudiced by the plaintiff's error in addressing the appeal to the department rather than to the commission. On this basis, we conclude that the present situation is akin to a defect in the service of process, rather than a total failure to serve the agency. Accordingly, the court had subject matter jurisdiction over the plaintiff's administrative appeal.

## II

We now address the plaintiff's claims on appeal challenging the court's dismissal of his administrative appeal. Our standard of review in such cases is well settled. The plaintiff's appeal to the Superior Court was brought pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. Judicial review of an administrative decision in an appeal under the UAPA is limited. See *Nussbaum* v. *Dept. of Energy & Environmental Protection*, 206 Conn. App. 734, 739, 261 A.3d 1182, cert. denied, 339 Conn. 915, 262 A.3d 134 (2021). "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither [the appellate] court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all the evidence, whether the agency, in issuing its order, acted unreason-

ably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Id.

"It is fundamental that a plaintiff has the burden of proving that the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion . . . . In addition, although we have noted that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts . . . we have maintained that [c]ases that present pure questions of law . . . invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Dept. of Agriculture*, 168 Conn. App. 255, 266, 145 A.3d 393, cert. denied, 323 Conn. 936, 151 A.3d 386 (2016).

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . ." (Internal quotation marks omitted.) *Towing & Recovery Professionals of Connecticut, Inc.* v. *Dept. of Motor Vehicles*, 205 Conn. App. 368, 371, 257 A.3d 978, cert. denied, 338 Conn. 910, 258 A.3d 1279 (2021).

"It is well established that it is the exclusive province of the trier of fact to make determinations of credibility, crediting some, all, or none of a given witness' testimony. . . . [A]n administrative agency is not required to believe any witness, even an expert. . . . Nor is an agency required to use in any particular fashion any of the materials presented to it as long as the conduct of the hearing is fundamentally fair. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Citations omitted; internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 830, 955 A.2d 15 (2008).

A

The plaintiff first challenges the court's determination that it was proper for the commission to rely on its own expertise in assessing the evidence and in reaching its conclusion that the plaintiff had breached the applicable standard of care. The plaintiff's claim that such a finding is improper is premised on his assertion

that none of the members of the commission "is an expert in the field involved in the case, which is the field of pediatric dentistry." We disagree.

Our case law makes clear that a governing medical board is granted broad discretion, pursuant to its statutory authority, in determining the appropriate standard of care in an administrative, licensing procedure. Our Supreme Court has held that "[a]s long as the board hearing and deciding a licensing matter is composed of at least a majority of experts in the field involved in the case, the board may rely on its own expertise in evaluating charges against persons licensed by the board and the requisite standard of care by which to judge such cases." *Levinson* v. *Board of Chiropractic Examiners*, 211 Conn. 508, 525, 560 A.2d 403 (1989); see also General Statutes § 4-178 (8) (administrative "agency's experience, technical competence, and specialized knowledge may be used in the evaluation of the evidence").

"[M]edical examining boards have expertise in the standards of care in their professions because they are comprised of practicing members of the profession. . . . It is to be presumed that the members of the . . . board, as composed under the statute, are qualified to pass upon questions of professional conduct and competence. . . . [E]xpert testimony on standards of care is not required in disciplinary hearings before medical examining boards. . . . If medical examining boards can rely on their own expertise on standards of care in disciplinary hearings, then they need not promulgate administrative regulations governing the standard of care. The UAPA provides that any agency may use its experience, technical competence and specialized knowledge in the evaluation of evidence in contested cases." (Citations omitted; internal quotation marks omitted.) *Fleischman* v. *Board of Examiners in Podiatry*, 22 Conn. App. 181, 188–89, 576 A.2d 1302 (1990).

In *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 665, 638 A.2d 6 (1994), the plaintiff argued on appeal, inter alia, that the medical examining board improperly relied on its own expertise in assessing the charges against him. Specifically, the plaintiff argued that "the board . . . reached unsubstantiated conclusions regarding the appropriate standard of care, contrary to the expert authority he had presented to the panel." Id., 666. Although "a person charged with professional misconduct has the right to offer expert opinions at the hearing before the [medical examining] board"; (internal quotation marks omitted) id., 666; our Supreme Court in *Pet* upheld the trial court's determination that there was no abuse of discretion by the board as to the standard of care employed in its determination and concluded: "*It was not improper for the board to utilize its own expertise in reaching its conclusions regarding the plaintiff's professional conduct.*" (Emphasis added.) Id., 667.

Applying the facts of the present case to the governing law, we agree with the court's conclusion that it was proper for the commission to rely on its own expertise in assessing the evidence and in reaching its determination that the plaintiff had breached the applicable standard of care. In the present case, the record reveals that the commission relied on the informed consent requirements of the AAPD, testimony from multiple witnesses—including Kohn, Federman, Guzzardi, the patient's mother, and the plaintiff—as well as its own expertise in the practice of dentistry. Notwithstanding the other evidence considered, the commission properly relied on its own expertise, technical competence, and specialized knowledge in concluding that the general consent form that the plaintiff had obtained from the patient's mother was insufficient to meet the appropriate standard of care.

The plaintiff's reliance on *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 596 A.2d 374 (1991), to the contrary, is misplaced. In *Jutkowitz*, the court found that the board was not composed of a majority of experts where it was composed of one public member and one chiropractor. See id., 109–12. *Jutkowitz* simply reaffirmed the rule articulated in *Levinson*. See *Levinson* v. *Board of Chiropractic Examiners*, supra, 211 Conn. 525. We already have concluded, and the plaintiff does not dispute, that the commission in the present case was composed of a majority of experts in the field of dentistry.

Rather, the plaintiff argues that the relevant field of expertise is not dentistry, but more precisely, the field of pediatric dentistry. The plaintiff cites no support for the contention that expertise in the specialized field of pediatric dentistry was required for the commission members to rely on their own expertise to determine the applicable standard of care. Indeed, there is no separate and distinct commission in the state of Connecticut authorized to handle licensing matters concerning pediatric dentistry. The commission is comprised of three public members and six practitioners in dentistry. See General Statutes § 20-103a. The commission, as well as the panel of three of those members that conducted the hearings, was comprised of a majority of experts in the field of dentistry. "Every member of a profession is presumed to know the governing standards of practice." *Breiner* v. *State Dental Commission*, 57 Conn. App. 700, 708, 750 A.2d 1111 (2000). Thus, pursuant to our governing law, the commission was well within its statutory authority to rely on its own expertise in assessing the evidence and reaching its conclusion that the plaintiff had breached the applicable standard of care.

Additionally, the plaintiff argues that General Statutes § 52-184c is the relevant provision that legally defines what constitutes a health care expert in a partic-

ular field. Section 52-184c (a) applies only to "any civil action to recover damages resulting from personal injury or wrongful death . . . result[ing] from the negligence of a health care provider . . . ." It is part and parcel of a broader statutory scheme applicable to civil, medical malpractice actions and is not applicable to the present case, an administrative licensing procedure, which is governed by § 4-178. Thus, the statutory definition provided in § 52-184c is not applicable to this case.

## B

The plaintiff next claims that the court erred in concluding that the commission properly permitted Federman to testify as an expert when Federman was not board certified and lacked knowledge concerning the prevailing standard of care. According to the plaintiff, Federman's testimony was inadmissible as to the standard of care, her opinions were "unreliable and inadmissible," and the admission of Federman's "testimony against [the] plaintiff's objection [was] unlawful." We are not persuaded.

In its memorandum of decision, the court stated: "Federman, an experienced pediatric dentist for over twenty years, had been assigned review responsibilities of various complaints by the commission for five years. Under the case law, the commission did not err in allowing her to testify as the commission's expert. See *Weaver* v. *McKnight*, 313 Conn. 393, 405, 97 A.3d 920 (2014). Under *Weaver*, the commission had broad discretion to qualify Federman as a witness. She had information not known to the public in general and offered to provide the commission with her helpful knowledge. The plaintiff also called . . . Kohn as his expert, and the commission made use of Kohn's testimony in its final decision as well. . . . It should be borne in mind that the commission had the authority to judge the credibility of the witnesses, and participants at the hearing, including Federman [and] Kohn . . . ."

In *Fleischman* v. *Board of Examiners in Podiatry*, supra, 22 Conn. App. 189, which involved a professional licensure proceeding, the plaintiff challenged the expert testimony presented concerning the standards of care in podiatry. Specifically, the plaintiff argued that the expert testimony presented to the board was so general that it was "virtually irrelevant." (Internal quotation marks omitted.) Id., 189. This court stated: "The probative value of the evidence was for the board to determine in the first instance, and that determination will not be disturbed on appeal unless it was arbitrary or an abuse of discretion. . . . Moreover, even supposing that [the expert's] testimony was completely irrelevant, the board was not required to hear expert testimony on standards of care in the first place." (Citation omitted.) Id. Accordingly, the credibility of Federman's testimony was for the commission to consider in its determination of the applicable standard of care in this

professional licensure proceeding.

The plaintiff further claims that Federman "must be board certified as the plaintiff is, in order to testify on the prevailing standard of care," and that because she is not board certified, she is not a " 'similar health care provider' " as defined pursuant to § 52-184c (c). As we stated previously in this opinion, § 52-184c is part of the statutory scheme that relates to medical malpractice actions and is inapplicable to our resolution of the present case. The plaintiff's claims as to Federman's testimony, therefore, fail.

C

The plaintiff next claims that the court improperly rejected his challenge to the commission's finding that he breached the standard of care by failing to obtain informed consent for placing more than one stainless steel crown on the patient's teeth because (1) he did obtain informed consent for the dental work performed and (2) the commission, in finding a deviation from the standard of care, acted in excess of its statutory authority.

1

With respect to the plaintiff's claim that he obtained informed consent for the dental work performed, the plaintiff argues that "[t]he [patient's] mother consented to the use of multiple crowns as needed, and to treating unforeseen conditions." We disagree.

Our review of this claim is governed by the substantial evidence rule. See *Nussbaum* v. *Dept. of Energy & Environmental Protection*, supra, 206 Conn. App. 739 ("[r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable" (internal quotation marks omitted)).

In support of his contention that he did obtain informed consent for the dental work performed on the patient, the plaintiff relies on the standard consent form that the patient's mother signed on the day of the procedure.[12] The commission, however, specifically found that "[t]he plaintiff's standard form of consent, [which was] silent on the mother's understanding of the procedure, [did] not govern," as the mother, at the time of signing that form, specifically had told the plaintiff that she expected to hear from him during the operation on the patient. Moreover, the commission concluded, on the basis of the testimony from the patient's mother, which it found credible, and Guzzardi, that the patient's mother had not given her consent to place the crowns but, rather, had requested that the plaintiff speak with her after obtaining X-rays. The plaintiff's expert, Kohn, even testified that if the testimony of the patient's mother was true concerning her request to speak with

the plaintiff after X-rays were taken, then the plaintiff's conduct violated the standard of care because his actions exceeded the consent he received from the standard written form. The commission's determination was based on its assessment of the credibility of the witnesses, which is not for this court or the trial court to second-guess. See *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, supra, 288 Conn. 830 ("[i]t is well established that it is the exclusive province of the trier of fact to make determinations of credibility, crediting some, all, or none of a given witness' testimony"). Because the record contains substantial evidence to support the commission's finding that the plaintiff violated the standard of care by not obtaining informed consent, the plaintiff's claim fails.

The plaintiff further argues that, "[e]ven if the mother's claim is true and credible, [his failure] to entertain her request [was] legally insufficient to support a claim of lack of informed consent." The plaintiff, again, relies on a medical malpractice case in support of this contention. As we already have noted, in administrative licensing proceedings, the relevant medical board is authorized to ascertain the standard of care, which, in the present case, meant determining the proper standard by which to obtain informed consent. See *Levinson* v. *Board of Chiropractic Examiners*, supra, 211 Conn. 525. The plaintiff's claim, thus, lacks merit.

2

The plaintiff next claims that the commission acted in excess of its statutory authority under § 20-114 (a) (2) by ordering disciplinary sanctions as a remedy for his alleged violation of the standard of care for failing to obtain informed consent.[13] We are not persuaded.

Section 20-114 (a) (2) provides in relevant part that the commission may impose sanctions when there is "proof that a practitioner has become unfit or incompetent or has been guilty of cruelty, incompetence, negligence or indecent conduct toward patients . . . ." The plaintiff claims that the language in the statute does not grant the commission the authority to discipline him in this case because the department did not allege negligence or incompetence in its charges, and the commission's finding of lack of informed consent is not the same as a finding that he was incompetent or unskillful.

In *Altholtz* v. *Dental Commission*, 4 Conn. App. 307, 310, 493 A.2d 917 (1985), this court affirmed the trial court's dismissal of the plaintiff dentist's administrative appeal. On appeal, the plaintiff in *Altholtz* claimed, inter alia, that § 20-114 was unconstitutionally vague. This court concluded that the statute was not vague, stating: "Terms associated with the trade or business with which a given statute is concerned should be accorded the meaning which they would convey to an informed person in that trade or business. . . . We presume that

members of a professional health licensing board are competent to decide on the basis of such terms whether certain conduct is in derogation of professional standards. . . . It is also our view that what constitutes 'unprofessional conduct' and what renders a professional 'unfit' or 'incompetent' are to be determined 'by those standards which are commonly accepted by those practicing the same profession in the same territory. . . . These standards are part of the ethics of the profession, and every member of the profession should be regarded as an expert with regard to the determination of their meaning." (Citations omitted.) Id., 314–15. Thus, in light of this court's decision in *Altholtz*, it was well within the commission's authority to determine the meaning of the terms in § 20-114 (a) (2) relevant to the practice of dentistry.

In the present case, the commission determined that the plaintiff's failure to provide the patient's mother with informed consent fell below the standard of care and, as a result, it imposed disciplinary measures against the plaintiff. The court concluded that § 20-114 (a) (2) "allows the commission to take disciplinary action when there is 'proof that a practitioner has become unfit or incompetent or has been guilty of cruelty, incompetence, negligence or indecent conduct towards patients.' However, both [*Altholz* v. *Dental Commission*, supra, 4 Conn. App. 307, and *Macko* v. *State Dental Commission*, Superior Court, judicial district of New Britain, Docket No. CV-08-4016782 (January 26, 2010)] allow the commission to take disciplinary action based on a dentist falling below a standard of care. These cases find [that] the use of incompetence and/or negligence in § 20-114 (a) (2) [is] equivalent to 'standard of care.' This has been in our law in the discipline of medical professionals since at least 1949. See *Jaffe* v. *Dept. of Health*, 135 Conn. 339, 351, 64 A.2d 330 (1949)." We agree with the court. Accordingly, we conclude that the commission acted within its statutory authority to discipline the plaintiff as it did in this case.

D

The plaintiff next challenges the court's determination that the evidence in the record supports the commission's finding that he failed to adequately chart caries and decalcifications in violation of the standard of care. The plaintiff alleges, in effect, that the record does not contain substantial evidence to support this finding. We do not agree.

In its final decision, the commission concluded that the department did not sustain its burden of proof as to the charges that the plaintiff "placed one or more crowns without adequate justification, or without adequately documented justification . . . ." In its memorandum of decision, the court concluded that "the record permitted the commission to find . . . that the plaintiff failed to provide the required full details for

his decision to place the additional crowns." On appeal, the defendant points to this purported discrepancy between the court's conclusion and the commission's finding as to the adequacy of the charting for the placement of additional crowns. Although we agree that the court misstated the commission's conclusion, any error was harmless given that the plaintiff was not disciplined for failing to adequately chart the placement of the additional crowns and given that substantial evidence in the record existed to support the commission's actual finding of inadequate charting of caries and decalcifications, for which, in part, the disciplinary action was imposed.

In the present case, the commission concluded that the plaintiff had failed to meet the standard of care due to his inadequate charting. In making that finding, the commission relied on ample evidence, including the plaintiff's operative note made during his treatment of the patient, multiple X-rays of the patient, and witness testimony concerning the plaintiff's charting. In its final decision, in support of this finding, the commission explained: "Kohn testified that cervical decalcification of teeth is part of the cavities process and the initial lesion of tooth decay or infection of the tooth. . . . It has a chalky white appearance and is the first sign of clinical tooth decay. . . . Kohn also testified that, when an operative note makes a notation for multisurface caries, it could mean decalcification, part of a continuum of tooth decay. It can include decalcified lesions that are really soft and chalky, which can be just scraped away. It can also include a decalcification that is not soft, and which amounts to an actual cavity . . . . Lastly . . . Kohn testified that based on the quality of the X-ray images he could not discern any interproximal decay on the teeth except, possibly, on the distal side of tooth L and the distal side of tooth S. . . . Federman testified that she did not see any decay on the X-rays provided that warranted a crown."

"The [commission] agrees with . . . Federman's testimony that the X-rays fail to show cervical decalcifications on [various teeth] that require crowns. The [commission] also finds that the [plaintiff's] operative note fails to adequately describe the cervical decalcification that the [plaintiff] found in his examination. The [plaintiff's] operative note does not describe whether the cervical decalcification was at the initial chalky white stage that could be scraped away or whether it amount to a cavity and therefore warranted more aggressive treatment."

On the basis of this evidence, the commission concluded that the "[d]epartment has sufficiently established . . . that the [plaintiff] failed to adequately chart findings of cervical decalcification in violation of the standard of care." We agree and conclude that the defendant's challenge to the sufficiency of the evidence

in the record to support that finding is unavailing.

E

The plaintiff's next claim is that there are unresolved inconsistences in the commission's decision. Specifically, the plaintiff argues that "the final finding that the treatment provided was justified according to the record . . . is inconsistent with the finding that [the] plaintiff's charting to justify the crowns is inadequate." (Footnote omitted.)We are not persuaded.

In its final decision, the commission found that the department did not meet its burden of proving the charge that the plaintiff placed one or more crowns without adequate justification, or without adequately documented justification. The commission did find, however, as it had in its initial decision, that the department did meet its burden to prove the charges that the plaintiff failed to adequately chart findings of cervical decalcification and that the plaintiff failed to adequately chart caries or other dental disease for one or more of the teeth that he crowned. The six charges that the department alleged against the plaintiff are not dependent on one another. The commission was well within its authority to find that the department proved some of the charges alleged against the plaintiff, while finding that the department had failed to prove other charges. See *Wolf* v. *Commissioner of Motor Vehicles*, 70 Conn. App. 76, 83, 797 A.2d 567 (2002) ("the existence of contradictory evidence and the possibility of drawing two inconsistent conclusions from the evidence does not preclude an administrative agency's finding from being supported by substantial evidence"). Accordingly, this claim fails.

F

The plaintiff's final claim is that the court's decision violates his right to fundamental fairness. We decline to review this claim.

The plaintiff acknowledges that his constitutional claim is unpreserved and seeks review of it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). His claim is predicated on his assertion that informed consent was obtained properly. In making that assertion, the plaintiff appears to be challenging the commission's assessment of the credibility of the witnesses, as well as its findings that he deviated from the standard of care by charting inadequately and failing to obtain informed consent, which we already have addressed and have determined are not improper. The plaintiff argues in conclusory fashion that his constitutional right to fundamental fairness was violated; however, his claim, essentially, is another challenge to the sufficiency of the evidence to support the finding that he deviated from the standard of care. Because the plaintiff has failed to explain what part of

the proceedings allegedly constituted a violation of any constitutional right, the claim is inadequately briefed and we decline to review it. See *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480 ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" (internal quotation marks omitted)), cert. denied, 244 Conn. 908, 713 A.2d 8298 (1998). Moreover, our Supreme Court repeatedly has held that "the procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, supra, 228 Conn. 661.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Dental caries are defined as "a destructive disease of the teeth that starts at the external surface [and] is followed . . . with subsequent cavitation and direct bacterial invasion . . . ." Stedman's Medical Dictionary (28th Ed. 2006) p. 316.

[2] We note that, in his principal appellate brief, the plaintiff sets forth eleven separate issues on appeal. For judicial convenience, we have distilled the plaintiff's arguments to the aforementioned claims.

[3] We note that the commission did not raise the issue of subject matter jurisdiction as an alternative ground for affirmance pursuant to Practice Book § 63-4 (a) (1) or file a cross appeal from the Superior Court's ruling pursuant to Practice Book § 61-8. "Nevertheless, we consider this issue on its merits because it implicates our subject matter jurisdiction and, therefore, may be raised at any time. See, e.g., *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 569, 858 A.2d 709 (2004). Moreover, the [plaintiff has] not been prejudiced by the [commission's] late raising of the . . . issue on appeal because that question was argued extensively before the [Superior Court] . . . ." *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 253 n.17, 990 A.2d 206 (2010).

[4] The department investigates complaints concerning the competency of licensed health care professionals pursuant to General Statutes §§ 19a-14 (b) (4) and 20-103a. If the department's investigation determines that probable cause exists, it issues a statement of charges regarding the alleged improper conduct to the appropriate board.

Moreover, we note that, although subsection (b) of § 19a-14 has been the subject of an amendment since the events underlying this appeal; see Public Acts 2018, No. 18-48, § 4; that amendment has no bearing on this appeal, and, therefore, we refer to the current revision of the statute.

[5] The commission's enabling act, General Statutes § 20-103a, provides in relevant part: "(a) The State Dental Commission shall consist of nine members . . . six of whom shall be practitioners in dentistry residing in this state who are in good standing in their profession and three of whom shall be public members. . . .

(b) . . . Said commission shall (1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints filed against practitioners and (3) impose sanctions where appropriate."

[6] General Statutes § 20-114 (a) provides in relevant part: "The Dental Commission may take any of the actions set forth in section 19a-17 for any of the following causes . . . (2) proof that a practitioner has become unfit or incompetent or has been guilty of cruelty, incompetence, negligence or indecent conduct toward patients . . . ."

Although § 20-114 (a) has been the subject of an amendment since the events underlying this appeal; see Public Acts 2016, No. 16-66, § 12; that amendment has no bearing on this appeal, and, therefore, we refer to the current revision of the statute.

[7] The commission explained in its final decision: "Decalcification of teeth is part of the cavities process and the initial lesion of teeth decay or infection of the tooth. It is a clinical sign of tooth decay."

[8] The panel conducted the hearing in accordance with General Statutes § 4-166 et seq., and § 19a-9-1 et seq. of the Regulations of Connecticut State Agencies.

[9] Section 19a-9-25 of the Regulations of Connecticut State Agencies pro-

vides in relevant part: "If a hearing is held before less than a majority of the members of a board who are authorized by law to render a final decision, a majority of the members of a board shall review all rulings on dispositive motions and shall render the final decision. . . ."

[10] Finding number twenty-six of the commission's initial decision stated: "In accordance with the [AAPD] [g]uidelines, stainless steel crowns are an appropriate treatment for interproximal multi-surface caries in primary teeth."

[11] The amended finding number twenty-six in the commission's final decision provides in relevant part: "The AAPD guideline does not establish the standard of care. It makes recommendations if certain circumstances are present based upon clinical presentation. . . . In this case, based upon the commission's review of all of the evidence, including the X-rays, and including the testimony of [Federman], the commission concludes that [the plaintiff] did not practice below the standard of care with respect to the placement of the stainless steel crowns."

[12] Specifically, the plaintiff relies on the following language in the consent form: "I understand that my child's doctor may find or discover additional conditions which in his professional judgment make it advisable to perform additional or different procedures than those planned. I authorize my doctor and his assistants, and other healthcare providers to perform such other procedures which they deem advisable in their professional judgment."

[13] The plaintiff also claims that the court improperly rejected his argument that the commission's order placing him on probation was arbitrary and unreasonable. The plaintiff has failed to brief this claim adequately, and, thus, we decline to review it. See *Canner* v. *Governor's Ridge Assn., Inc.*, 210 Conn. App. 632, 653, 270 A.3d 694 (2022) ("[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.)).